UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━

UNITED STATES OF AMERICA,

v.                                                    DECISION AND ORDER
                                                       11-CR–200

KRISTINA THOMAS,

                          Defendant.

━━━━━━━━━━━━━━━━━━━━━━━━━━

## INTRODUCTION

Before the Court is defendant Kristina Thomas' motion for an order
vacating her conviction, granting her a new trial, and granting her request for bail
pending sentencing.  (Dkt. No. 64)  For the following reasons, defendant's motion
is denied in its entirety.

## BACKGROUND AND RELEVANT FACTS

On August 16, 2011 defendant was charged, in a two-count indictment,
with bank fraud (in violation of 18 U.S.C. §1344(2)) and aggravated identity theft
(in violation of 18 U.S.C. §1028A(a)(1) and (2)).  (Dkt. No. 1)  In sum, the
Government alleged that while defendant was employed in the mailroom at
HSBC bank, she obtained the personal information of a third party and opened
fraudulent accounts in this individual's name.  The Government contended that
defendant then made purchases with this account, and caused or allowed others
to make similar purchases or cash checks also using the fraudulent accounts.

The matter was referred to Magistrate Judge Hugh B. Scott for supervision of pre-trial proceedings pursuant to Section 636(b)(1)(A) of Title 28 of the United States Code. Defendant was arraigned on these charges on October 31, 2011. At that time, attorney J. Carr, who had previously been assigned to represent defendant, asked to be relieved as counsel. On November 1, 2011, Magistrate Judge Scott appointed attorney Samuel P. Davis to represent defendant.

The Government filed a motion to set a trial date on May 4, 2012. (Dkt. No. 17) The Court held a status conference on May 9, 2012 at which time defendant requested, and was granted, a three week adjournment to explore a plea disposition. Another status conference and meeting to set a trial date was held on May 29, 2012. At that time, the Court scheduled jury selection for August 21, 2012, with proof to begin the next day.[1] A final pre-trial order was issued, which included deadlines for the parties to file pre-trial submissions. (Dkt. No. 19) The final pre-trial conference was scheduled for August 16, 2012.

The Government filed its pre-trial submissions in early August in accordance with the Court's Order. On August 12, 2012, one week prior to jury selection, defense counsel filed a motion to adjourn the trial. (Dkt. No. 28) Therein, Davis stated that he was having difficulty communicating with his client and preparing for trial because defendant was living in Georgia. The Government

---

[1] Both Davis and defendant failed to appear at the May 29, 2012 status conference. However, counsel received notice of the trial date, *via* electronic mail through the Court's CM/ECF system, on May 29, 2012.

opposed the request. (Dkt. No. 30) On August 15, 2012 the Court issued a text order denying the motion to adjourn the trial. (Dkt. No. 31) The Court stated that defense counsel had three months prior notice of the trial date, which represents ample time for counsel to prepare and defendant to return from Georgia. The final pre-trial conference was held on August 16, 2012. Davis and defendant were both present for the pre-trial conference. The next day, Davis filed a second motion to adjourn the trial. (Dkt. No. 33) The Court granted a brief adjournment until August 24, 2012, and advised that any further requests for an adjournment would be denied.

On August 23, 2012, again one day before jury selection, Davis filed a third motion to adjourn the trial. (Dkt. No. 42) Counsel stated that he "had not had the benefit of time to formulate strategies", that he needed to conduct a field investigation, and that proceeding with trial as scheduled "would wax counsel ineffective for the purpose of providing defendant with adequate representation at trial." *Id*. That same day, the Court issued a detailed text order denying the motion to adjourn. The Court stated, *inter alia*, that this was an uncomplicated fraud case which, at the time, was over two years old. Davis, who had been appointed to the case in November of 2011 and had notice of the trial date for three months, had ample time to gather evidence, conduct investigations, and

ensure that witnesses or investigators were available.[2]

On Friday, August 24, 2012, prior to the start of jury selection, Davis asked the Court for permission to allow attorney Anthony Pendergrass, an experienced criminal defense attorney, to assist as co-counsel during jury selection. The Court's docket entry from the proceeding that day states that defendant was in agreement with the arrangement. The Court granted the request, but instructed that Pendergrass would not be permitted to seek fees pursuant to the Criminal Justice Act. The Court then proceeded with jury selection, during which time defendant had the benefit of both Davis and Pendergrass acting as counsel.

That same day, at the conclusion of jury selection, defendant informed the Court that she wished to change her plea. Defense counsel and counsel for the Government represented to the Court that they were prepared to go forward with the plea at that time. However, the Court determined that, out of an abundance of caution and in order to give defendant ample time to consider the plea agreement and her decision to change her plea, the plea proceeding would be adjourned until the following Monday.

The parties returned to Court on Monday, August 27, 2012, at which time defendant informed the Court that she would not accept the plea offer and

---

[2] In the text order denying Davis' third motion to adjourn the trial, the Court cited *United States v. Cusack*, 229 F.3d 344, 349 (2d. Cir. 2000), wherein the Second Circuit explained that trial courts have broad discretion to deny motions to adjourn and that seeking an adjournment on the eve of trial will usually present the most compelling scenario for a Court to deny the motion.

instead wished to proceed to trial. The Court then commenced with the trial. After preliminary instructions were given to jurors, Davis requested the Court's permission to allow Pendergrass to assist as co-counsel for the remainder of the trial.[3] The Court noted that the request was unusual, but allowed Pendergrass to proceed as co-counsel.[4]

During the trial, the Government called four witnesses who testified regarding defendant's participation in the check and credit card fraud schemes. Three of those witnesses were co-participants in the crime. The Government also called two HSBC Bank employees, as well as Lynda Johnson, the individual whose name and personal information was used to obtain the fraudulent credit card and checks. Clint Homer, an inspector for the United States Postal Inspection Service who investigated the fraudulent credit card and convenience check scheme, also testified. The testimony provided by the Government witnesses was credible, detailed, and corroborative.

At the conclusion of the Government's case, defendant made a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court denied defendant's motion. Following summations by counsel, the jury charge and a

---

[3] At that time, Davis represented to the Court that when he initially requested permission for Pendergrass to assist during jury selection, it was his intention to request permission for Pendergrass to assist during the remainder of the trial as well.

[4] The Court again reminded the parties that although Pendergrass was permitted to proceed as co-counsel, he would not be entitled to any fees pursuant to the Criminal Justice Act.

period of deliberation, the jury convicted defendant of both counts charged in the indictment on August 29, 2012. A schedule was established for sentencing and submission of sentencing papers. Defendant was then remanded to the custody of the United States Marshals Service pending sentencing.[5]

Prior to the scheduled sentencing date, the Court received a number of letters from defendant complaining that Davis was ineffective during and after the trial. Defendant represented to the Court that Davis met with her only once since her conviction and failed to return her phone calls. The Court held a status conference on November 30, 2012, during which time the Court questioned defendant about her correspondence and relationship with Davis. Defendant represented to the Court that her relationship with Davis had broken down completely and that she could no longer continue to work with him. The Court relieved Davis from the case and appointed attorney Cheryl Meyers-Buth to represent defendant pursuant to the Criminal Justice Act.

The Court then granted a number of adjournments to allow Buth to meet with defendant and become familiar with the case. On August 2, 2013 Buth filed the instant motion requesting that the Court vacate defendant's conviction and grant defendant a new trial. The significant delay in filing the Rule 33 motion occurred because it took an extended period of time for Buth to receive the trial

---

[5] Defendant was remanded pending sentencing, in part, because there were allegations that during the trial she had attempted to intimidate or influence a witness.

transcript and Davis' case file. The motion was made soon after Buth had an opportunity to review the complete record. Defendant argues that serious errors were made during trial which resulted in a constitutional denial of her right to effective assistance of counsel. Defendant also renews her Rule 29 motion and requests bail pending sentencing.

## Discussion

### *Procedural Posture and Timeliness of Defendant's Motion for a New Trial*

Most claims of ineffective assistance of counsel are brought pursuant to Section 2255 of Title 28 of the United States Code, in the form of a habeas corpus motion or petition attacking sentencing. *United States v. Dukes*, 727 F.2d 34 (2d. Cir. 1984). However, courts in this Circuit have held that the proper procedural avenue for defendants who wish to raise an ineffective assistance of counsel claim after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. *United States v. Brown*, 623 F.3d 104 (2d. Cir. 2009) ("[b]ecause [defendant] raised his ineffective assistance claim after the jury convicted him but before sentence was imposed, we agree with the district court that a habeas petition...was not 'the proper vehicle' by which to advance his claims"); *United States v. Rivera*, 2013 U.S. Dist. LEXIS 82076 (EDNY 2013). Since defendant has yet to be sentenced, her ineffective assistance of counsel claims have been properly raised in the instant Rule 33 motion.

Federal Rule of Criminal Procedure 33 provides that, upon a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." *See* Fed. R. Crim. P. 33. Rule 33 further provides that any motion for a new trial, grounded on any basis besides newly discovered evidence, should be filed within 14 days after the guilty verdict. *Id*. At the conclusion of the trial, Davis and Pendergrass did not file any post-trial motions. Buth filed the instant motion on August 2, 2013, almost one year after the jury found defendant guilty of bank fraud and aggravated identity theft. The Government argues that the motion should be dismissed as untimely.

Rule 45 of the Federal Rules of Criminal Procedure indicates that a Court may extend the time to file a motion for a new trial for good cause or in cases of excusable neglect. The Supreme Court has referred to "excusable neglect" as an "elastic concept". *Pioneer Inv. Services Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 392 (1993). The Supreme Court has further held that a determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 394-95. Factors to be considered in evaluating excusable neglect include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d. Cir. 2003).

The Court appointed Buth as new counsel after defendant wrote numerous letters stating that her attorney was non-responsive and ineffective. Defendant's prior counsel did not file any post-trial motions, and it appears that Buth filed the instant motion as soon as practicable after she was provided the file and trial transcript. The Court finds that defendant's delay in filing the motion is excusable, and that good cause exists to consider the untimely filing. The Government did not lose any claims or defenses as a result of the late filing, and therefore will not be prejudiced. Defendant brought her ineffective assistance of counsel claims to the attention of the Court shortly after the trial concluded, and she should not be penalized as a result of her prior attorney's failure to file post-trial motions. In addition, new counsel acted diligently and in good faith in making the instant motion after receiving and reviewing the file and trial transcript. Thus, the Court will consider the motion for a new trial on its merits.

### Standard for Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees all criminal defendants the right to counsel and the Supreme Court recognized, long ago, "that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction...has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a defendant must show that counsel's performance was deficient. *Id*. In order to do so, a

defendant must demonstrate that her attorney's performance "fell below an objective standard of reasonableness." *Id*. at 687-88; see also *United States v. Cohen*, 427 F.3d 164, 167 (2d. Cir. 2005). Second, a defendant must establish that counsel's deficient performance prejudiced her defense. *Strickland,* 466 U.S. at 668. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 698. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id*. The Supreme Court has instructed that crucial to any such review is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686; *United States v. Gaskin*, 364 F.3d 438, 468 (2d. Cir. 2004) (defendant "bears a heavy burden" in demonstrating ineffective assistance of counsel).

### *Prior Counsel's Alleged Deficiencies*

Under the first component, the Court "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011). In *United States v. Strickland*, the Supreme Court described the limited approach a trial court is obligated to take in critiquing an attorney's representation. *Strickland*, 466 U.S. at 689 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after

conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular

act or omission of counsel was unreasonable." *Id.* Also in *Strickland*, the

Supreme Court explained:

> A convicted defendant making a claim of ineffective assistance must
> identify the acts or omissions of counsel that are alleged not to have
> been the result of reasonable professional judgment. The court must
> then determine, whether, in light of all the circumstances, the
> identified acts or omissions were outside the wide range of
> professionally competent assistance. In making that determination,
> the court should keep in mind that counsel's function, as elaborated
> in prevailing professional norms, is to make the adversarial testing
> process work in the particular case. At the same time, the court
> should recognize that counsel is strongly presumed to have rendered
> adequate assistance and made all significant decisions in the
> exercise of reasonable professional judgment.

*Id.*

Here, defendant lodges an extensive list of complaints regarding the

performance of her prior counsel, both prior to and during the trial. She claims

that Davis was unprepared to go to trial, that he failed to adequately communicate

with her prior to trial, and that he did not conduct investigations, file motions *in

limine*, subpoena potential witnesses or review discovery with her. More

specifically, defendant argues that Davis was ineffective in that he failed to file

pre-trial motions to prevent references to her sexual orientation, her personal

relationships with a number of the witnesses and the fact that she used a

nickname. With respect to Davis' performance during trial, defendant avers that

he failed to make key objections, did not have a coherent trial strategy, failed to call any witnesses, allowed another attorney to take over significant responsibilities during the trial, and allowed defendant's sexual orientation to be made an issue.

Included in the Government's response to defendant's motion for a new trial is an affidavit provided by Davis. Davis' sworn affidavit directly contradicts a number of defendant's contentions. He states that between November 2011 and August 2012, when defendant was living in Georgia, he wrote letters and made a number of phone calls to defendant to discuss the case. In addition, he apparently had some contact with defendant's mother during this time. Davis explains that in the several days leading up to trial, when defendant had returned to Buffalo, there were several face-to-face meetings during which time he reviewed the Government's evidence and discovery with defendant, including statements from the Government's chief witnesses. The Court credits Davis' sworn statements regarding his trial preparation and communication with defendant and finds that his level of preparation was within the "wide range of professional competent assistance." It is also noted that with respect to discovery, counsel was not obligated to review each and every piece of discovery with defendant. Here, it is sufficient that Davis reviewed the witness statements with defendant, since those witnesses were the crux of the Government's case. *See Rodriguez v. United States*, 2013 U.S. Dist. LEXIS 94819 (SDNY 2013) ("Defense

counsel is not required to present a defendant, for his review, with all discovery material that defense counsel acquires.")

Moreover, the Court finds that the vast majority of the alleged "deficiencies" cited by defendant either constitute strategic decisions on the part of counsel that are not subject to review or challenge by this Court, or do not fall below an objective standard of reasonableness. Decisions such as what witnesses to call, if any, when to object, and what pre-trial motions to file are largely matters of tactic and strategy, and a lawyer's decision-making with regard to such trial decisions should not be second-guessed by the Court. *See United States v. Shtoukhamer*, 427 F.3d 164 (2d. Cir. 2005); *accord Brown v. Artuz*, 124 F.3d 73, 77 (2d. Cir. 1997) ("Like trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics' and thus are 'virtually unchallengeable' absent exceptional grounds for doing so."); *United States v. Smith*, 198 F.3d 377, 386 (2d. Cir. 1999) (Counsel's decision as to whether to call witnesses, and what witnesses to call, is a strategic decision that a court will not generally second guess.)

Defendant further argues that prior counsel's references to her sexual orientation and personal relationships with some of the witnesses constituted a grave error that was highly prejudicial to defendant's case. The Court disagrees, however, and notes that the record reflects that this line of questioning was a reasonable strategy on the part of defense counsel to attempt to discredit the

witnesses against defendant by revealing a motivation for them to lie. Likewise, while defendant argues it was highly prejudicial for counsel to allow a witness for the Government, Tanisha Humphrey, to be questioned about the nature of her personal relationship with defendant and alleged abuse during that time period, the Court finds that it was reasonable of counsel to pursue or allow this line of questioning in an attempt to show that Humphrey had motivation to lie or implicate defendant in the crime. The Court notes that this strategy was especially appropriate given the facts that the evidence against defendant was overwhelming, Humphrey offered some of the most compelling and damaging information against defendant, and there appeared to be no other way to attempt to discredit Humphrey's testimony.

Furthermore, even if the Court were to find that it was error for defense counsel not to file certain pre-trial motions, such as a motion to preclude references to defendant's sexual orientation and nickname or a *motion in limine* regarding the testimony of Humphrey, such errors or omissions did not fall below an objective standard of reasonableness which denied defendant the right to a constitutionally fair trial. The Court has considered the trial record and finds that the testimony regarding defendant's sexual orientation, nickname and personal relationships did not paint defendant in a bad light and constituted relevant and admissible background information as to how some of the witnesses and co-conspirators knew defendant as well as the nature of their relationships. Thus, it

14

was not wholly unreasonable for defense counsel to refrain from objecting to this line of questioning.  Further, Humphrey was called as a witness primarily to testify about defendant contacting her and asking her if she knew anyone who wanted to make some money by cashing checks.  The Court finds that it was not unreasonable for defense counsel to fail to file a *motion in limine* to preclude this testimony.  The testimony was relevant and admissible, despite the fact that it was hearsay, because it was a statement of a party opponent.

Finally, the Court finds that defendant's claim that Davis was deficient because he "relinquished important stages of trial to another lawyer" is wholly without merit.  As noted above, Davis asked for a number of adjournments prior to the start of jury selection on the grounds that he was not adequately prepared to start the trial.  In addition to granting at least one of those adjournments, the Court allowed Pendergrass to serve as co-counsel.  His assistance with the trial clearly served as a benefit to defendant rather than a detriment.  Pendergrass is an experienced criminal defense attorney who has tried a number of federal court cases.  Davis and Pendergrass were able to divide up the duties, such as opening and closing statements and cross-examinations of the witnesses, and thus each was afforded more time to prepare for aspects of the trial than otherwise would have been possible.  Defendant had the benefit of the knowledge, perspective and strategy of two litigators as opposed to one, and there is nothing in the record indicating that she did not fully consent to this arrangement.  In fact, the record

from the first day of jury selection reflects that the Court specifically asked defendant if she consented to Pendergrass, and the defendant indicated that she did.  Thus, the Court finds that not only did the assistance of Pendergrass help remedy Davis' request for an adjournment on the eve of trial, but it also provided a strong advantage to defendant over the course of the trial.

### Prejudice to Defendant

Even if defendant were able to demonstrate that counsel's performance fell below an objective standard of reasonableness, which she cannot, her ineffective assistance claim still fails because she cannot demonstrate prejudice.  In order to establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 688, 694; ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.")

The Court has carefully examined the trial record and finds that, in light of the overwhelming, credible and persuasive evidence presented by the Government, defendant was not prejudiced by her prior counsel's alleged errors and deficiencies.  Stephanie Stallworth testified that in December of 2005, she was told by defendant to expect something in the mail and that defendant would "take care" of her.  Stallworth explained that she then received, in the mail, a credit card and checks in the name of an individual she did not know and that she gave

16

those items to defendant. Stallworth further testified that defendant drove her to a store and permitted her to purchase earrings with one of the checks. She explained that defendant then told her to write a check to Assata Green in the amount of $900, and another check to Amerika Gray, also in the amount to $900. Stallworth further testified that defendant determined that Stallworth would receive $200 for writing the fraudulent checks, that Gray and Green would receive between $100 and $200 for cashing the checks, and that defendant would keep the remainder of the money. Stallworth also testified that defendant allowed her to make fraudulent purchases with the credit card received in the mail, and that defendant drove her to various locations to make those purchases. Green's testimony fully corroborated Stallworth's testimony. Green testified that defendant asked her to cash a check, that defendant accompanied her to cash the check, and that she received $100 for cashing the check as requested by defendant.

Humphrey, who the Court notes was an especially dynamic and believable witness, testified that defendant asked her if she knew anyone who was interested in making money by cashing checks. Humphrey testified that defendant later told her that Green agreed to cash the checks for her, and that defendant referred to Green as her "partner in crime." Humphrey testified that it was her understanding that defendant received some money as a result of the check cashing. Humphrey also testified that prior to the trial, defendant asked her to either change her testimony or not appear at the trial. Clint Homer, the lead case agent who

investigated the fraudulent credit card and check scheme, testified regarding his interview of defendant. Homer's testimony, which indicated that defendant evidenced a consciousness of guilt by making false exculpatory statements, was also credible and highly damaging to defendant.

Courts in this Circuit have held that the question to be asked in assessing the prejudice from counsel's errors, "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48 (2d. Cir. 2005) Here, co-conspirators Stallworth and Green provided unanimous and credible testimony as to defendant's participation in the bank fraud and identity theft scheme, which the jury clearly believed. Humphrey's testimony, which was also very credible, corroborated Stallworth and Green's testimony. Defendant's request that Humphrey either change her testimony or fail to appear at trial evidences a consciousness of guilt on the part of defendant, as did Homer's testimony regarding statements made by defendant during his interview. The jury returned a finding of guilty after it was presented with overwhelming evidence, including multiple first-hand accounts, of defendant's participation in the fraud.

Defendant argues that more investigative work should have been done, certain witnesses should have been called, other documents should have been subpoenaed, and more *motions in limine* should have been made. However, after hearing all of the testimony and reviewing the evidence presented, the Court finds

that the potential witnesses, documents or motions referenced by defendant would have accomplished little in altering the jury's view of the evidence presented. Likewise, the granting of further extensions of time for Davis to prepare for trial would have had virtually no effect given the overwhelming evidence that existed against defendant. For these reasons, the Court concludes that there is no reasonable probability that, absent counsel's alleged deficiencies, the outcome of the trial would have been affected in any way.

### The Proposed Plea Agreement

Defendant also argues that Davis was ineffective because he failed to adequately present and discuss the Government's felony plea offer. Defendant claims that Davis never informed her that a conviction for aggravated identity theft carried a statutory mandatory minimum sentence of 24 months, to be served consecutive to the sentence for the underlying offense. Defendant argues that Davis never made clear that had she accepted the plea offered at the start of jury selection, she would have avoided the mandatory minimum sentence and would have been eligible for a sentence that involved probation or home detention.

The Sixth Amendment right to effective counsel extends to plea negotiations. *United States v. Gordon*, 156 F.3d 376, 379 (2d. Cir. 1998). Defense counsel "has the duty to communicate formal offers from the prosecution [and] to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). In order for a court to

find that counsel provided ineffective assistance in the context of plea negotiations, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). Further, in order to justify an evidentiary hearing to determine whether counsel's ineffective assistance led a defendant to reject a plea agreement, the defendant must provide a credible sworn statement, as well as some objective evidence, such as a significant sentencing disparity, that he or she would have accepted the proposed plea offer if properly advised. *Puglisi v. United States*, 586 F.3d 209, 215-16 (2d. Cir. 2009).

Defendant cannot meet her burden in showing ineffective assistance of counsel with respect to plea negotiations. She does not provide her own sworn statement or any other credible evidence indicating that Davis failed to adequately explain either the plea offer or the mandatory minimum sentence she was facing if convicted on both counts at trial. In contrast, Davis has provided a sworn affidavit describing the steps he took during plea negotiations. Therein, Davis states that he initially discussed the Government's plea offer with defendant on January 3, 2012. Pursuant to that offer defendant would have pled guilty to bank fraud only and the Government would have dismissed the aggravated identity theft charge which carried a 24 month mandatory minimum sentence. However, defendant rejected the offer. Subsequently, in the days leading up to trial, Davis and Pendergrass again discussed the Government's plea offer with defendant, and

again explained that by accepting the plea, she would avoid the mandatory minimum sentence.  They informed defendant that if she were convicted at trial she faced a sentencing range of 34 to 40 months.  Davis states that defendant again rejected the plea and they proceeded with jury selection.  On the Friday of jury selection, and after extensive discussions between defense counsel, defendant and defendant's family, defendant decided to accept the plea.  A written plea, under which defendant would plead guilty to bank fraud and face a sentencing range of 6-12 months, was prepared by the Government.  Davis reviewed the plea agreement with defendant, and defendant and Davis both signed the agreement.  The Court then postponed the taking of the plea until the following Monday morning, in order to allow defendant time to fully evaluate her decision to plead guilty.

Davis further avers that over the following weekend, he again met with defendant and her family and discussed the terms of the plea agreement in detail. He again explained the risk of going to trial, including the mandatory 24 month minimum sentence, and recommended that defendant accept the plea.  Davis states that after weighing her options and speaking with her family, defendant elected not to plead guilty and instead proceed to trial.  A copy of the proposed plea agreement is attached to Davis' affidavit.

The trial record is consistent with Davis' affidavit.  Docket entries from August 24, 2012, the date of jury selection, state that defendant indicated to the

Court that she wanted to plead guilty. The Court adjourned until the following Monday, August 27, 2012, in order to allow defendant time to review and consider the plea agreement. Docket entries from August 27, 2012 state that upon returning to Court, defendant indicated that she would not plead guilty and instead wished to proceed to trial.

Defendant's self-serving, unsworn and unverified claims to her current counsel that Davis did not adequately explain the plea agreement or the risks of going to trial are insufficient to overcome Davis' sworn statement that he explained the plea agreement, the risks of trial, and the potential mandatory minimum sentence to defendant on multiple occasions. The fact that there was no plea agreement in Davis' file or that the exact terms of the plea agreement were not discussed on the record are of no consequence. Davis' affidavit, the attached plea agreement, and the Court's docket entries all confirm that defendant was provided with a detailed plea agreement, which was explained to her on multiple occasions, and which she was given ample time to consider. The Court credits Davis' sworn statements that he explained the risks of going to trial as well as the mandatory minimum sentence she would face if found guilty, and that he recommended that she accept the plea. It is clear that defendant elected, on her own accord, to proceed to trial after being fully informed as to the risks and potential consequences of her decision. Defendant's current self-serving claims find no support in the record, and are simply not enough to raise a question as to

her prior counsel's effectiveness with respect to plea negotiations. *See Cummings v. Lee*, 2013 U.S. Dist. LEXIS 152373 (EDNY 2013) (even if a sentencing disparity had been alleged, petitioner's self-serving and unsworn assertion of prejudice did not entitle petitioner to an evidentiary hearing or habeas relief with respect to his plea-related ineffective assistance of counsel claim); *Beltram v. United States*, 2012 U.S. Dist. LEXIS 143960 (SDNY 2013) (in considering an ineffective assistance of counsel claim, a court need not accept a petitioner's uncorroborated, self-serving testimony as true).

### *Defendant's Renewed Rule 29 Motion*

Defendant renews her motion for judgment of acquittal, which was previously made at the conclusion of the Government's case in chief. A motion for judgment of acquittal may be granted after the evidence on either side is closed if the evidence is insufficient to sustain a conviction for the crime charge. *See* Fed. R. Crim. P. 29(a). A Rule 29 motion may also be made or renewed after a jury returns a verdict of guilty. *See* Fed. R. Crim. P. 29(c)(1); *United States v. Pizzonia*, 577 F.3d 455, 457 (2d. Cir. 2009). In determining a Rule 29 motion, the Court must view the evidence in the light most favorable to the Government. *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d. Cir. 1991).

In evaluating a Rule 29 motion, the test established by the United States Supreme Court requires a court to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In other words, "a court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d. Cir. 1999).

As discussed in detail above, there was overwhelming evidence presented in support of defendant's guilt as to both the bank fraud and the aggravated identity theft. The evidence was presented mainly in the form of credible, unanimous and detailed testimony from co-conspirators, the lead case agent and other witnesses. The Court considered all the evidence and testimony presented during the trial, and finds that a rational factfinder certainly could have found the essential elements of both counts beyond a reasonable doubt. Defendant has not presented any new evidence in support of her claim, and, as explained above, her Sixth Amendment claim for ineffective assistance also lacks merit. Thus, defendant's renewed Rule 29 motion is denied.

### *Defendant's Request for Bail*

Finally, defendant requests bail pending sentencing. Defendant argues that she has no prior criminal convictions, appeared for trial, and was fully compliant with the terms of her pre-trial release. Defendant argues that if she is permitted to return to Georgia, where she was living previously, or allowed to reside with her

24

uncle in Boston, Massachusetts, she will not pose a threat to any witness.

At the conclusion of the trial, the Government made a motion to revoke defendant's bail based upon credible allegations that she had attempted to intimidate or influence a witness. The Court granted the Government's motion and defendant was remanded. A defendant shall be detained pending sentencing unless a Court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community. 18 U.S.C. §3143

During the trial, Humphrey testified that prior to the date she was scheduled to testify, defendant called her and asked her to alter her testimony or refrain from testifying at the trial. Humphrey credibly testified that defendant asked her to do this in a manner that made her feel threatened. Even if defendant is released, and permitted to reside in Georgia or Boston pending sentencing, defendant still has access to the Government's witnesses. Defendant has not demonstrated a change in circumstances sufficient to warrant release, and her motion for bail pending sentencing is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for an order vacating her conviction, granting her a new trial, and granting her request for bail pending sentencing is denied in its entirety. The Court will issue a subsequent text order setting forth the schedule for sentencing.

SO ORDERED.

_Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

Dated: February 24, 2014